T.C. Memo. 2008-59

UNITED STATES TAX COURT

ROSE LYNN RICHMOND, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11405-04L.                  Filed March 10, 2008.

Robert M. Naiman, for petitioner.

Mayer Y. Silber, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, Judge:  Petitioner invoked the Court's jurisdiction under section 6330 to review respondent's determination to proceed with a proposed levy to collect her unpaid income tax

liability for 1998.[1]  As explained in detail below, we shall sustain respondent's determination.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and attached exhibits are incorporated in our findings by this reference.  Petitioner resided in Illinois at the time the petition was filed.

Respondent's 1998 Levy

On April 3, 1998, respondent served a notice of levy on petitioner's retirement account (the 1998 levy).  At the time, petitioner owed a total of $44,716.85 in Federal income tax for 1982, 1985, 1987, 1991, and 1993 to 1996.  On May 18, 1998, respondent received an unspecified sum from petitioner's retirement account and applied $8,735.89 and $11,468.08 of those funds to petitioner's unpaid taxes for 1982 and 1985, respectively.  Respondent also applied $11,179 collected from petitioner's retirement account as a credit against the income tax petitioner would owe for 1998 on the amount withdrawn by the levy from the account.

Petitioner's Refund Claims for 1982 and 1985

In September 1998, petitioner filed with respondent Forms 843, Claim for Refund and Request for Abatement, for the taxable

---

[1]  All section references are to the Internal Revenue Code of 1986, as amended.

years 1982 and 1985.  Petitioner claimed she was entitled to refunds on the ground that the period of limitations governing collection for the taxable years 1982 and 1985 expired before respondent collected funds from her retirement account in May 1998 as described above.

Respondent considered petitioner's refund claims and granted petitioner partial relief for 1982.  Specifically, respondent agreed that the period of limitations governing collection had expired with regard to certain assessments for the taxable year 1982 that respondent recorded in 1983.  On February 7, 2000, respondent refunded $6,320.86 to petitioner for 1982.

In contrast, respondent disallowed so much of petitioner's refund claims as pertained to amounts that respondent collected in May 1998 and applied against assessments for the taxable years 1982 and 1985 that were recorded in 1986.[2]  Respondent determined that the period of limitations governing collection remained open with regard to these later assessments because the limitations period was tolled while respondent considered an offer-in-compromise that petitioner and her husband submitted to respondent for several taxable years including 1982 and 1985.  See sec. 301.7122-1(f), Proced. & Admin. Regs.

---

[2] The record does not include a copy of a notice of claim disallowance for the taxable years 1982 and 1985.  However, a transcript of petitioner's account for the taxable year 1985 includes an entry dated Jan. 6, 2003, which states "CLAIM DISALLOWED".

The parties' disagreement whether the period of limitations governing collection for the taxable years 1982 and 1985 remained open in May 1998 turns on the specific date in 1990 that petitioner and her husband submitted the offer-in-compromise in question. Relying on entries appearing in transcripts of petitioner's accounts, specifically Forms 4340, Certificate of Assessments, Payments, and Other Specified Matters, for the taxable years 1982 and 1985, and a Master File Transcript (TAXMODA) for the taxable year 1985, respondent determined that the offer-in-compromise was submitted on January 4, 1990, making the 1998 levy timely. Relying primarily on correspondence from the revenue officer tasked with reviewing petitioner's offer-in-compromise, petitioner asserted that the offer was submitted on November 29, 1990, in which case the 1998 levy was untimely. There is no dispute that petitioner withdrew the offer-in-compromise on June 28, 1991.

In November 2000, petitioner requested the assistance of the Internal Revenue Service Taxpayer Advocate Service (TAS) with regard to her refund claims for the taxable years 1982 and 1985. By letter dated September 11, 2001, TAS informed petitioner that its review of the matter revealed that, as of May 1998--the date respondent collected funds from petitioner's retirement account--

the period of limitations governing collection remained open with regard to assessments for the taxable years 1982 and 1985 that were recorded in 1986.

The record does not reflect whether petitioner filed a refund suit in Federal District Court or the Court of Federal Claims with regard to her refund claims for the taxable years 1982 and 1985.  See sec. 6532(a) (a taxpayer may file a refund suit under section 7422 after 6 months from the date of filing a claim for refund and within 2 years from the date of mailing of a notice of disallowance).

Petitioner's Tax Liability for 1998

Petitioner failed to file a tax return for 1998.   On February 5, 2001, respondent filed a substitute for return for the taxable year 1998 on petitioner's behalf.  On April 30, 2001, respondent mailed to petitioner a notice of deficiency for 1998. Petitioner filed a petition for redetermination with the Court (assigned docket No. 9419-01) challenging the notice of deficiency.

The deficiency respondent determined for petitioner's 1998 taxable year was $87,811.  The notice of deficiency included as an attachment a tax calculation summary in which respondent acknowledged that petitioner was entitled to a credit of $24,844 for tax withholding during 1998.  The $24,844 amount comprised $13,665 withheld from petitioner's wages and $11,179 withheld

from petitioner's retirement account in connection with the 1998 levy (described above).

In July 2001, petitioner submitted to respondent a Form 1040, U.S. Individual Income Tax Return, for 1998. Petitioner claimed that she was entitled to a prepayment credit of $53,290 for 1998--an amount that included the $24,844 figure for tax withholding referred to in the notice of deficiency and the $8,736 and $11,468 amounts respondent collected pursuant to the 1998 levy and applied to petitioner's accounts for the taxable years 1982 and 1985.

On May 22, 2002, the Court entered an agreed decision at docket No. 9419-01 which provided that petitioner was liable for a deficiency of $34,163 for 1998, as well as additions to tax of $2,097, $233, and $114 pursuant to sections 6651(a)(1) and (2) and 6654, respectively. The parties stipulated (below the signature of the Judge who entered the decision) that (1) petitioner was entitled to a prepayment credit of $24,844 for 1998, and (2) the deficiency of $34,163 was computed without taking the prepayment credit into account. No appeal was filed, and the Court's decision at docket No. 9419-01 is long since final. Secs. 7481(a)(1), 7483.

Collection Action for 1998

Although respondent sent to petitioner a number of notices

of balance due for the taxable year 1998, petitioner failed to remit payment. On February 11, 2003, respondent mailed to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 1998 in accordance with section 6330. Petitioner timely submitted to respondent a Form 12153, Request for a Collection Due Process Hearing, which stated: "THE DEFICIENCY IS DUE TO IRS AUDIT AND APPEALS HEARING. THE CASE IS CURRENTLY BEING DISCUSSED WITH TAXPAYER ADVOCATE IN CHICAGO, ILLINOIS. WE REQUEST THAT NO ADDITIONAL COLLECTION ACTIVITY BE COMMENCED UNTIL AFTER RESOLUTION WITH TAXPAYER ADVOCATE." During the administrative proceedings that followed, the Appeals officer assigned to the matter informed petitioner that the Appeals Office did not have the authority to consider petitioner's claim for prepayment credits from the taxable years 1982 and 1985.

On June 2, 2004, respondent mailed to petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 informing petitioner that respondent intended to proceed with the proposed levy. An Appeals case memo attached to the notice of determination referred to petitioner's claims for prepayment credits and stated in pertinent part:

> The prepayment credits were withholdings and prior levies for the 1982 and 1985 tax years. An adjustment was made disallowing the levies at the Examination and Appeals level. The United States Tax Court rendered a decision that was entered on May 22, 2002 that decided that the prior levies would not be allowed as a

prepayment credit.  * * *  Appeals at this time is not changing a decision by the Tax Court.

Petitioner filed with the Court a timely petition seeking review of respondent's determination.  Petitioner asserts that respondent erred in determining that she may not dispute the amount of her unpaid tax for the taxable year 1998 by claiming that she is entitled to prepayment credits from the taxable years 1982 and 1985.

OPINION

Collection Procedures

Section 6330(a) provides the general rule that the Secretary may not levy on any property or right to property of any taxpayer unless the Secretary has provided 30 days' advance notice to the taxpayer of the right to an administrative hearing before the levy is carried out.[3]  If a taxpayer makes a timely request for an administrative hearing, a hearing shall be conducted by the IRS Office of Appeals (Appeals Office) before an impartial officer.  Sec. 6330(b)(1), (3).  The procedures for the administrative hearing are set forth in section 6330(c).  First, the Appeals officer must obtain verification from the Secretary that the requirements of any applicable law or administrative

---

[3]  Sec. 6330 was enacted under the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3401, 112 Stat. 746, and is effective with respect to collection actions initiated more than 180 days after July 22, 1998, RRA 1998 sec. 3401(d), 112 Stat. 750.

procedure have been met.  Sec. 6330(c)(1).  Second, the taxpayer may raise any issue relevant to the unpaid tax or proposed collection action at the hearing, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives.  Sec. 6330(c)(2)(A). Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he or she did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability.  Sec. 6330(c)(2)(B).  Section 6330(c)(4) provides in pertinent part that a taxpayer may not raise an issue at the hearing if the issue was raised and considered at a previous administrative or judicial proceeding and the taxpayer participated meaningfully in such proceeding.[4]

---

[4]  Sec. 6330(c)(4) provides:

> SEC. 6330(c).  Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> \*     \*     \*     \*     \*     \*     \*
>
> (4) Certain issues precluded.--An issue may not be raised at the hearing if--
>
>> (A) the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and
>>
>> (B) the person seeking to raise the issue participated meaningfully in such hearing or proceeding.
>
> This paragraph shall not apply to any issue with

(continued...)

In accordance with the foregoing, the Appeals Office must make a collection determination after reviewing the matters prescribed in section 6330(c)(1) and (2) and considering whether the proposed collection action balances the need for efficient collection of taxes with the legitimate concern of the taxpayer that the collection be no more intrusive than necessary. Sec. 6330(c)(3).

After the Appeals Office makes a determination under section 6330(c), the taxpayer may petition the Tax Court for review. Sec. 6330(d). If the taxpayer's underlying tax liability is properly at issue, we review any determination regarding the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). We review any other administrative determinations regarding the proposed collection action for abuse of discretion. Id.

Analysis

As previously discussed, on May 22, 2002, the Court entered an agreed decision at docket No. 9419-01 that petitioner was liable for a deficiency of $34,163 for the taxable year 1998, as

_____

[4](...continued)
respect to which subsection (d)(2)(B) applies.

Sec. 6330(d)(2)(B) provides that the Office of Appeals retains jurisdiction with respect to any determination made under sec. 6330 if the taxpayer requests a subsequent hearing, after exhausting all administrative remedies, to raise an issue that a change in his or her circumstances affects the determination.

well as various additions to tax. The parties stipulated that petitioner was entitled to a prepayment credit of $24,844 for 1998 and that the deficiency of $34,163 was computed without taking that credit into account.

Petitioner nevertheless contends that respondent should not be permitted to proceed with the proposed levy at issue in this case because she owes nothing for 1998. Specifically, petitioner avers that the period of limitations governing collection for the taxable years 1982 and 1985 expired before respondent collected funds from her retirement account in 1998 and, as a result, respondent erred insofar as he applied those funds to her accounts for the years 1982 and 1985. As petitioner sees it, the amounts so applied to her accounts for the taxable years 1982 and 1985 should have been applied instead as prepayment credits to completely offset any amount that she owes for 1998.

Respondent concedes, contrary to a statement in the notice of determination, that the Court did not address petitioner's claim to prepayment credits from 1982 and 1985 in connection with the agreed decision entered in petitioner's deficiency case at docket No. 9419-01. On the other hand, respondent maintains that petitioner is barred under section 6330(c)(4) from raising the prepayment credits issue in this collection review proceeding because petitioner already raised that issue in refund claims that she submitted to respondent for the taxable years 1982 and

1985.  We agree with respondent that section 6330(c)(4) bars our consideration of the issue.

As a threshold matter, we note that respondent carried out the 1998 levy before section 6330 became effective.  See supra note 3.  Consequently, petitioner did not have an opportunity for pre-levy administrative or judicial review before respondent collected funds from her retirement account.  The record shows, however, that petitioner promptly obtained post-levy administrative review by filing with respondent claims for refund for 1982 and 1985.  Respondent considered petitioner's claims and granted petitioner partial relief by abating some of the earlier assessments recorded for the taxable year 1982 and issuing petitioner a refund for that year.  Respondent disallowed a relatively small portion of the remainder of petitioner's claim for refund for 1982 and her entire claim for refund for 1985.[5] Undaunted, petitioner subsequently requested the assistance of the TAS, but to no avail--the TAS concluded that petitioner was not entitled to the refunds she sought.

In an attempt to resurrect the issue a third time, petitioner asserts that she is entitled to prepayment credits from the taxable years 1982 and 1985 as a defense to respondent's

---

[5]  Although it is clear that petitioner's refund claims were disallowed as outlined above, the record does not reflect whether petitioner is eligible to file a refund suit for the taxable years 1982 and 1985 in accordance with secs. 7422(a) and 6532.

efforts to collect her unpaid tax for 1998. Notably, petitioner does not seek to (nor could she) challenge the amount of her underlying tax liability for 1998 as determined by the Court at docket No. 9419-01. Instead, petitioner insists that there is no unpaid balance of tax due for 1998.

Section 6330(c)(4) in relevant part precludes a taxpayer from raising an issue in a section 6330 proceeding if the issue was raised and considered in any other previous administrative or judicial proceeding and the taxpayer participated meaningfully in such proceeding. We conclude that the issues concerning the timeliness of the 1998 levy and petitioner's related refund claims for the taxable years 1982 and 1985 were raised and considered in a previous administrative proceeding within the meaning of section 6330(c)(4). Moreover, on the basis of petitioner's submissions in the record and the other evidence concerning the refund claims for 1982 and 1985, we are satisfied that petitioner participated meaningfully in the previous administrative proceeding concerning those claims. Consequently, consistent with the proscription contained in section 6330(c)(4), we hold that petitioner is barred from reasserting her claims to prepayment credits from the taxable years 1982 and 1985 in this proceeding.[6] See, e.g., Magana v. Commissioner, 118 T.C. 488,

---

[6] Even if sec. 6330(c)(4) did not preclude consideration of the issue, we observe that the weight of the evidence in this
(continued...)

492 (2002) (taxpayer barred under section 6330(c)(4) from raising at hearing previously litigated statute of limitations issue).

In the absence of a spousal defense, a proper challenge to the appropriateness of the intended collection action, or an offer of a viable collection alternative, we shall sustain respondent's determination to proceed with the proposed levy.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[6](...continued)
case supports respondent's position that petitioner and her husband submitted their offer-in-compromise on Jan. 4, 1990, and, therefore, the 1998 levy was timely.